UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
MOBITECH REGENERATIVE MEDICINE,                             :
INC.,                                                       :
                                        Plaintiff,          :     15 Civ. 8286 (LGS)
                                                            :
                -against-                                   :     **OPINION AND ORDER**
                                                            :
BAKKEN VALUE CREATORS, LLC, et al.,                         :
                                        Defendants.         :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Mobitech Regenerative Medicine, Inc. ("MRM") retained Defendant Bakken Value Creators, LLC ("BVC") to help find a buyer or licensee for MRM's medical device. Shortly after the agreement was executed, MRM sued BVC and Defendant Eusebius Wortelboer, BVC's founder and CEO. BVC asserts counterclaims and a third-party claim against Third-Party Defendant Vijay Vad, MRM's founder and CEO. MRM moves for summary judgment on BVC's counterclaims and on MRM's request for a declaratory judgment that BVC has no claim on MRM's patent related to its medical device. Vad moves for summary judgment on the third-party claim against him. For the following reasons, MRM's motion is granted in part and denied in part, and Vad's motion is granted.

**I.    BACKGROUND**

      The following facts are taken from the parties' statements pursuant to Federal Rule of Civil Procedure 56.1 and the parties' submissions. For purposes of this motion, all factual disputes are resolved in favor of the non-moving party, BVC, and all reasonable inferences are drawn in its favor. *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 71–72 (2d Cir. 2016).

### A.     The Parties' Agreement

MRM is the developer of a medical device called the Smart Syringe and is the assignee of a related patent.  Between approximately 2013 and 2015, MRM discussed with a company ("Company X")[1] the possibility of a licensing deal for the Smart Syringe.  As of September 2015, the companies had not finalized a deal.  During the summer of 2015, MRM contacted BVC about a potential engagement in which BVC would help MRM find a buyer or licensee for the Smart Syringe.  BVC knew of MRM's prior communications with Company X.

On September 12, 2015, MRM and BVC executed a Consulting and Advisory Engagement (the "Agreement").  Vad signed the agreement for MRM.  The Agreement states that BVC will provide "consulting and advisory services to develop and execute a business plan to commercialize MRM's products and/or intellectual property."  According to Section 1.0, "[t]he objective of the engagement" is to "obtain either: (a) a financing partner or syndicate to fund . . . the final development of the product . . . or (b) a sale or license agreement providing for the development and marketing of the product with a strategic or financial partner."  The Agreement defines each of the two transactions as a "Transaction Event."  Section 3.0 entitles BVC to compensation "upon completion of a Transaction Event," the amount of which was in part a percentage of the proceeds paid to MRM from the Transaction Event.

Section 2.0, the "Term of Engagement," provides that BVC's engagement is "an exclusive engagement for a period of six months," which began on September 12, 2015, and further states the "engagement term will be extended for another three months if a bona fide term sheet has been signed with a third party contemplating a Transaction Event."  The final clause of Section 2.0 provides:

---

[1] Pursuant to the Court's Order dated October 28, 2015, the company's name has been redacted.

>The compensation to BVC referred to in [Section 3.0] hereof will be deemed earned and be payable to BVC if MRM completes a Transaction Event within twelve months following the end of the BVC engagement term with a party with whom BVC has had substantial dealings on behalf of MRM during the term of engagement.

Section 5.0, the "Positive Covenants," requires MRM "to transfer its rights to the patent into escrow as security for its performance of the terms of the engagement letter on terms satisfactory to BVC acting reasonably."  As of the filing of the instant motion, MRM had not transferred its patent rights into escrow.

### B.     BVC's Filing with the United States Patent and Trademark Office

Around October 5, 2015, BVC filed a "Notice of Interest" with the United States Patent and Trademark Office ("USPTO") relating to MRM's patent.  The Notice is a "Conditional Assignment" that, according to BVC, gives notice that MRM agreed to assign the patent.  Later that month, MRM sued BVC and Wortelboer, seeking among other relief a declaratory judgment that BVC's assignment is void.

On November 17, 2015, BVC filed a "Correcting Assignment," which states that the "assignor will transfer its right to the patent into escrow as security for benefit of assignee."  It also filed a "Notice of Interest" stating that MRM and BVC had entered into a "finder agreement" that required MRM "to transfer its rights to the Patent into escrow as security for the performance by MRM of its obligations" under that agreement.

In December 2015, Company X indicated that it would not complete a licensing transaction with MRM in light of the dispute with BVC.  BVC retained a consulting company owned by Douglas Kneebone to help BVC resolve the dispute.  Kneebone, who Wortelboer referred to as his partner, attests that in December 2015, he called Company X's CEO to explain the terms of the Agreement and to encourage Company X to enter into a licensing agreement

with MRM. He also spoke at length with Company X's counsel, again encouraging Company X to proceed with the licensing agreement. Kneebone then sent Company X a letter urging it to complete a licensing agreement with MRM. According to Kneebone, the letter included a draft agreement that was "intended to satisfy Company X's concerns on the matter of title to the patent and securing remittances of the finder's compensation due to BVC."

Vad attests that MRM did not (1) enter into a Transaction Event or (2) sign a bona fide term sheet with Company X or any other third party within the six-month engagement term, which ended on March 12, 2016, or as of May 31, 2016, the date the instant motion was filed. BVC did not adduce evidence to the contrary, contending in its Rule 56.1 Statement that it lacks information sufficient to determine the truth of Vad's statements. Wortelboer testified that BVC did not obtain a financing partner nor a sale or license agreement for MRM and he was not aware that Kneebone's company had done so.[2]

---

[2] BVC conceded in its memorandum of law that a Transaction Event had not been completed within the six months after the Agreement was executed, noting that Kneebone's communications with Company X in December 2015 were taken for the purpose of "complet[ing] . . . a licensing agreement." In a letter filing requested by the Court nearly six months later, BVC changed its position, arguing for the first time that a Transaction Event had occurred in September 2015 when, as Vad testified, Company X sent a "proposed contract" to MRM. Although the Court had requested a joint status letter regarding any disposition or other action concerning MRM's medical device, it did not invite additional briefing. Because the testimony cited by BVC is not new evidence and BVC does not provide any explanation for its change in position, its argument is not properly before the Court. *See Johnson & Johnson v. Guidant Corp.*, 525 F. Supp. 2d 336, 359 (S.D.N.Y. 2007) (Lynch, J.) ("Arguments first raised in reply memoranda are not properly considered . . . and of course the same is true of arguments first raised by letter several months after reply memoranda and all other motion papers have been filed." (internal quotation marks and citation omitted)); *see also Colon v. City of New York*, No. 11 Civ. 0173, 2014 WL 1338730, at *9 (E.D.N.Y. Apr. 2, 2014) ("[A]rguments raised for the first time in reply papers or thereafter are properly ignored."). Further, the argument lacks merit. BVC fails to create a genuine factual dispute that a Transaction Event was completed because it cites no evidence that Company X and MRM ever finalized a deal of any kind or that MRM received any funding from Company X.

## II. STANDARD

Summary judgment is appropriate where the record before the court establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the initial burden of informing the court of the basis for the summary judgment motion and identifying those portions of the record that demonstrate the absence of a genuine dispute as to any material fact.  Fed. R. Civ. P. 56(c)(1); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Victory v. Pataki*, 814 F.3d 47, 58–59 (2d Cir. 2016).  Courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor.  *See Anderson*, 477 U.S. at 255.  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alteration in original) (internal quotation marks and citation omitted).

"If the defendant asserts in a Rule 56 motion that undisputed facts show the absence of jurisdiction, the court proceeds, as with any summary judgment motion, to determine if undisputed facts exist that warrant the relief sought."  *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990); *accord Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.,* 722 F.3d 81, 85 (2d Cir. 2013).  Accordingly, at the summary judgment stage, a plaintiff's "showing[] necessary to defeat a jurisdiction testing motion[] must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." *Dorchester Fin. Sec.*, 722 F.3d at 85 (quoting *Ball*, 902 F.2d at 197).

## III.   DISCUSSION

### A.   BVC's Request for Declaratory Judgment

BVC's counterclaim seeks a declaratory judgment that the Agreement is valid and binding.  MRM seeks summary judgment on this counterclaim on the ground that it is moot.  The motion is denied because MRM has failed to make a sufficient showing of mootness.

"Mootness is a doctrinal restriction stemming from the Article III requirement that federal courts decide only live cases or controversies . . . ." *In re Zarnel*, 619 F.3d 156, 162 (2d Cir. 2010).  Under the doctrine of mootness, a court no longer has subject matter jurisdiction to grant the relief requested "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013) (internal quotation marks omitted).  Where a party seeks equitable relief relating to a contract, that contract's expiration generally moots a party's claim.  *See, e.g.*, *Dean v. Blumenthal*, 577 F.3d 60, 64–66 (2d Cir. 2009) (dismissing as moot a party's request for a declaratory judgment and injunctive relief regarding the Connecticut Attorney General's contractual bar on campaign contributions by private law firms performing legal work for Connecticut where the contractual bar was no longer in effect); *Hollings v. TransactTools, Inc.*, 128 F. App'x 820, 822–23 (2d Cir. 2005) (summary opinion) (holding that a request for declaratory judgment relating to non-compete agreement after expiration of non-compete period was moot).

MRM argues that BVC's claim for declaratory judgment is moot because the Agreement expired by its own terms.  This contention is rejected because there is a genuine factual dispute whether the Agreement remains in effect insofar as it obligates MRM to pay BVC should a Transaction Event with Company X be completed.  Specifically, under the final clause of Section

6

2.0, BVC is entitled to compensation "if MRM completes a Transaction Event within twelve months following the end of the BVC engagement term with a party with whom BVC has had substantial dealings on behalf of MRM during the term of engagement."  The twelve-month period, if triggered, would be in effect until March 12, 2017.

The interpretation of Section 2.0's final clause is governed by New York contract law.[3]  Under New York law, contracts "should be construed according to their plain meaning." *Luitpold Pharm., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 91 (2d Cir. 2015) (citing *Uribe v. Merchs. Bank of N.Y.*, 693 N.E.2d 740, 743 (N.Y. 1998)).  "[I]t is common practice for the courts of [New York] State to refer to the dictionary to determine the plain and ordinary meaning of words to a contract."  *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 567 (2d Cir. 2011) (alterations in original) (internal quotations mark omitted); *accord Lend Lease (U.S.) Const. LMB Inc. v. Zurich Am. Ins. Co.*, 22 N.Y.S.3d 24, 29 (1st Dep't 2015).

As pertinent here, "[t]he common sense meaning of 'on behalf of,' according to the dictionary, is 'in the interest of,' 'as a representative of,' or 'for the benefit of.'"  *Madden v. Cowen & Co.*, 576 F.3d 957, 973 (9th Cir. 2009) (quoting Webster's Third New Int'l Dictionary 198 (2002)); *see also* Oxford English Dictionary Online (3d ed. 2012) ("behalf, n. 1. on behalf of: . . . d. As concerns, with regard to, in the matter of.").  The phrase "on behalf of" therefore may apply not only to actions by BVC in its capacity as an agent of MRM but also BVC's dealings with a third party taken in the interest of or for the benefit of MRM.

---

[3] Because the Agreement does not contain a choice of law provision, this Opinion applies New York law as the parties do.  *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) ("The parties' briefs assume that New York substantive law governs the issues . . . presented here, and such implied consent is, of course, sufficient to establish the applicable choice of law.").

A reasonable trier of fact could conclude that Kneebone's communications with Company X constituted substantial dealings on behalf of MRM sufficient to trigger Section 2.0's twelve-month period. In December 2015, Kneebone spoke with both Company X's CEO and its counsel, encouraging Company X to proceed with a license agreement. He also sent a letter to Company X proposing a settlement of the dispute between BVC and MRM whereby Company X would obtain licensing rights to MRM's device and would split its royalty payments between BVC and MRM. The settlement would have the "effect of releasing [Company X] to get on with its business without further delay or loss." Making all reasonable inferences in favor of BVC, a trier of fact could conclude that Kneebone's efforts to facilitate an agreement among the parties that would enable Company X to complete a licensing agreement amounts to substantial dealings on behalf of MRM under the Agreement.

If Kneebone's actions triggered the twelve-month period provided by Section 2.0, then the Agreement is still in effect: MRM may still be required to pay BVC should a Transaction Event occur before March 12, 2017. MRM has therefore failed to meet its summary judgment burden to show that the Agreement has expired and, in turn, that BVC's claim is moot. Summary judgment is denied as to BVC's claim for a declaratory judgment.

B.     **Injunctive Relief**

Summary judgment is granted in part and denied in part as to BVC's request for injunctive relief, which allegedly seeks to compel MRM to comply with the Agreement. In particular, BVC requests an injunction ordering MRM to (1) transfer its rights to the patent into escrow, (2) disclose all information regarding any negotiations with third parties concerning the sale or licensing of the patent to those third parties, and (3) pay BVC its commission under the Agreement for moneys paid or pledged to MRM or place such funds into an escrow account.

To obtain permanent injunctive relief, a party "must demonstrate (1) irreparable harm . . . and (2) actual success on the merits." *Ognibene v. Parkes*, 671 F.3d 174, 182 (2d Cir. 2011). Injunctive relief must be "narrowly tailored to fit specific legal violations." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011) (internal quotations marks omitted); *see also O Zon Inc. v. Charles*, 272 F. Supp. 2d 307, 312 (S.D.N.Y. 2003) (holding that a plaintiff "must allege some wrongful conduct on the part of [a defendant] for which [his or her] requested injunction is an appropriate remedy" (internal quotation marks omitted)). Thus, to survive summary judgment, BVC must raise a genuine dispute of material fact regarding the merits of the alleged legal violation, namely, MRM's breach of the Agreement. *Cf. Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (affirming injunction that enforced contract covenant against breaching party).

BVC's request for an injunction that requires MRM to pay BVC money paid or pledged to MRM by a third party or place this money in escrow is dismissed because BVC has failed to adduce any evidence that a third party has paid or pledged any funds to MRM. As for Company X, Vad testified that Company X sent MRM a "proposed contract" but that the contract was never finalized as a result of BVC's filing with the USPTO. Because there is no evidence of non-payment in breach of the Agreement, there is no underlying legal violation to enjoin. *See Mickalis Pawn Shop*, *LLC*, 645 F.3d at 144; *O Zon Inc.*, 272 F. Supp. 2d at 312. To the extent the injunction is an attempt to enjoin a future breach, BVC's request fails because it has not raised a genuine factual dispute that "the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages." *N.A.A.C.P., Inc. v. Town of E. Haven*, 70 F.3d 219, 224 (2d Cir. 1995); *see also Advanced Glob. Tech., LLC v. XM Satellite Radio, Inc.*, No. 07 Civ. 3654, 2007 WL 3196208, at *3 (S.D.N.Y.

Oct. 29, 2007) ("Regarding the allegations that [the defendant] may possibly breach the Agreement in the future, such claims are nothing more than unripe speculation.").

Similarly, summary judgment is granted as to BVC's request for disclosure of any negotiations with third parties because BVC fails to cite any obligation under the Agreement or otherwise that requires MRM to disclose this information. Absent evidence that MRM's non-disclosure breaches the Agreement or is otherwise a legal violation, BVC fails to raise a genuine factual dispute it is entitled to compel MRM to take the requested action. *See Mickalis Pawn Shop*, *LLC*, 645 F.3d at 144; *O Zon Inc.*, 272 F. Supp. 2d at 312.

Summary judgment is denied as to BVC's request that MRM transfer its rights to the patent into escrow. BVC seeks to compel MRM to comply with Section 5.0 of the Agreement, which requires MRM to transfer its patent rights as security for its performance of the Agreement, an action that MRM admits it has not taken. Because there is a genuine factual dispute whether the Agreement is still in effect, summary judgment is not warranted on BVC's request to enjoin what a trier of fact could conclude is an ongoing breach of the Agreement. Moreover, MRM's argument that BVC's request for injunctive relief under the Agreement is moot fails because, as explained above, there is a genuine factual dispute whether the Agreement has expired.

### C. Third-Party Complaint

Summary judgment is granted on BVC's third-party claim against Vad for "breach of warranty of authority," which alleges Vad lacked authority to execute the Agreement for MRM. Under New York law, the doctrine of implied warranty of authority provides:

> a person who purports to make a contract . . . with a third party on behalf of another person, lacking power to bind that person, gives an implied warranty of authority to the third party and is subject to liability to the third party for damages

> for loss caused by breach of that warranty, including loss of the benefit expected from performance by the principal.

*DePetris & Bachrach, LLP v. Srour*, 898 N.Y.S.2d 4, 6 (1st Dep't 2010); *see also Riverside Research Inst. v. KMGA, Inc.*, 497 N.E.2d 669, 671 (N.Y. 1986) ("An agent implicitly warrants its own authority to act and is liable for all damages which flow naturally from reliance upon its assertion of authority."). While BVC asserts that it seeks damages under this claim, it fails to cite evidence that it actually incurred any loss as a result of Vad's alleged misconduct. Absent evidence of damages, BVC's third-party claim must be dismissed. *See DePetris*, 898 N.Y.S.3d at 6.

### D. MRM's Request for Declaratory Relief

MRM argues that it is entitled to a declaratory judgment that BVC has "no claim" on MRM's patent because the Agreement has expired and BVC's filings with the USPTO are therefore null and void. Summary judgment is denied because, as explained above, there is a genuine factual dispute whether the Agreement has expired.

### IV. CONCLUSION

For the foregoing reasons, MRM's motion for summary judgment in its favor on BVC's counterclaims is DENIED as to BVC's request for declaratory judgment and request for injunctive relief relating to MRM transferring its patent rights into escrow and GRANTED in all other respects. Vad's motion for summary judgment on BVC's third-party claim is GRANTED, and Vad is dismissed from this action. MRM's motion for summary judgment relating to its request for declaratory judgment is DENIED.

The Clerk of Court is directed to close the motion at Dkt. No. 71.

Dated: December 12, 2016
       New York, NY

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**